**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<table>
<tr><td>
U.S. EQUAL EMPLOYMENT<br>
OPPORTUNITY COMMISSION,<br><br>
         Plaintiff,<br>
v.<br><br>
COCA-COLA BEVERAGES NORTHEAST,<br>
INC.,<br><br>
         Defendant.
</td>
<td>
Civil Action No. 1:26-cv-115-PB-AJ
</td></tr>
</table>

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Coca-Cola Beverages Northeast, Inc. ("Coke Northeast" or "Defendant"), by and through its counsel, submits the following Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint.

**INTRODUCTION**

The United States Equal Opportunity Employment Commission ("EEOC") brings this action on behalf of the charging party Matthew Taylor and a class of alleged similarly aggrieved male employees. The EEOC asserts that Coke Northeast's efforts to provide equal opportunity to women by holding a program in September 2024, intended to increase the pool of qualified candidates for advancement within the Company somehow disadvantaged male employees with regard to their terms, conditions, and privileges of employment. However, the EEOC does not and cannot allege that Coke Northeast in any way disadvantaged male employees regarding any term, condition, or privilege of employment. Coke Northeast's actions were fully compliant with Title VII of the Civil Rights Act of 1964, as well as its then existing affirmative action obligations

imposed by the United States under Executive Order 11246, and in no way trammeled the rights of male employees. The EEOC even fails to allege harm cognizable under the standard established in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354-55 (2024).

Coke Northeast's Women's Forum ("Forum") focused on increasing the pool of qualified candidates for promotion; it did not impact the selection process utilized to fill roles at Coke Northeast. The Forum supplemented, in very modest terms, its many other recruitment efforts targeting both male and female employees. Put simply, the Forum in no way impacted male employees' opportunities for advancement within Coke Northeast.

Though the Forum stands on its own as lawful, Coke Northeast had the legal obligation to engage in affirmative action to address the manifest imbalance of women in its workforce that the Company self-identified as part of its obligation to comply with Executive Order 11246 ("EO 11246"). The President did not revoke EO 11246 until January 21, 2025, more than four months after the Forum took place.

Even absent any obligation under EO 11246, Coke Northeast's good faith efforts to encourage women to consider career opportunities and career paths at Coke Northeast was entirely consistent with its legal right to engage voluntarily in such outreach. *Johnson v. Transportation Agency,* 480 U.S. 616, 628-30 (1987); *United Steelworkers of America v. Weber,* 443 U.S. 193, 207 (1979) ("…Congress did not intend to limit traditional business freedom to such a degree as to prohibit all voluntary, race-conscious affirmative action."). The EEOC has strongly advocated for decades that employers could and should voluntarily engage in such efforts. The EEOC's advocacy on this point is expansive and includes its official regulatory Guidelines **that remain in effect today**. *See 29 CFR § 1608*. In May 2024, just months prior to Coke Northeast's September 11 one day Forum, the EEOC argued in an Amicus Curiae brief in a case arising under 42 U.S.C.

2

§1981 that "[t]he EEOC and the Supreme Court have long agreed that Title VII permits employers to adopt voluntary affirmative-action plans to remedy manifest imbalances in their workforces …" Brief of The Equal Employment Opportunity Commission as Amicus Curiae Supporting Defendants on The Issue Addressed Herein at 2, *Roberts v. Progressive Preferred Ins. Co.*, 2024 WL 2295482 (N.D. Ohio May 21, 2024), *aff'd*, 167 F.4th 955 (6th Cir. 2026).  Such was the state of the law and the EEOC's formal Guidelines in 2024, and remains so today.

## FACTUAL BACKGROUND

The EEOC alleges that on September 10-11, 2024, Coke Northeast held an employer-sponsored event that included a "social reception, team-building exercises[,] … recreational activities[,]" and "the opportunity to hear from speakers, including Jennifer Mann, President of Coca-Cola North America Operating Unit, and corporate executives from other companies, who discussed their career paths[,]" and excluded the charging party and a class of alleged similarly aggrieved employees based on sex. *See Complaint*, at ¶¶ 13(c)-(g), ECF No. 1.  The EEOC also alleges Coke Northeast (a) "excused female employees … from their normal work duties … and paid them their normal salary or wages without requiring them to use vacation or other paid time off[;]" (b) "paid for hotel room charges and taxes for female employees [;]"  and (c) "provided other benefits to female employees who attended the event including, for example, food and/or beverages." *See Complaint*, at ¶¶ 13(h)-(J), ECF No. 1.

The EEOC does not allege that male employees lost any wages or benefits that they earned on the day the Forum took place.  The EEOC could not make such an allegation as both men and women who reported either to the Forum or to their regular work assignment on September 11, 2024, were paid in the normal course of business.[1]  The EEOC takes exception to the fact that

---

[1] Hourly employees who chose to attend the Forum may have given up an opportunity to earn overtime pay.

3

Coke Northeast paid female employees if they attended the entire work-related Forum on September 11, 2024, in place of performing their regular work responsibilities on that day. In addition, the EEOC appears to claim that the food provided at this Forum and the cost of a hotel room for a single night for those employees who stayed at the hotel the night prior to the Forum, caused cognizable harm to male employees regarding their terms, conditions, or privileges of employment.

Finally, without any factual underpinning, the EEOC requests this Court to award punitive damages based on a single conclusory allegation that Coke Northeast engaged in the alleged unlawful employment practices "with malice or reckless indifference to the federally protected rights of male employees." Objectively unreasonable and vexatious, this frivolous request should be stricken.

## ARGUMENT

The Complaint must plead facts that, when accepted as true, establish a claim for relief that is plausible on its face or the Complaint must be dismissed under ***Fed. R. Civ. P. 12(b)(6)***. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). "[L]egal conclusion[s] couched as … factual allegation[s]" do not suffice. ***Papasan v. Allain***, 478 U.S. 265, 286 (1986). Rather, the EEOC must plead facts that demonstrate there is "more than a sheer possibility [that Coke Northeast] has acted unlawfully. ***Ortiz v. Fed. Bureau of Prisons***, 290 F. Supp. 3d 96, 101 (D. Mass. 2017) (***citing Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)). The Complaint's threadbare allegations fall short as it fails to allege facts that support a claim that Coke Northeast violated Title VII of the Civil Rights Act of 1964. Similarly, the EEOC fails to allege any facts to support its request for punitive damages.

**I.     The Forum Was A Lawful Affirmative Effort Designed To Expand Coke Northeast's Pool Of Qualified Candidates Among Existing Employees Without Impacting In Any Way The Selection Process For Advancement.**

Coke Northeast designed the Forum to encourage female employees to consider advancement opportunities at the Company as part of an effort to address a self-identified manifest imbalance. As outlined above, the one-time one-day event aimed to encourage female employees to consider pathways toward advancement and to inspire them to seek the same in an effort to broaden the pool of qualified internal candidates for promotions. The Forum did not eliminate the many ways Coke Northeast educates both men and women about such pathways to advancement. The Forum did not and does not have any bearing on decisions with respect to the qualified candidates who have been or who will be selected for promotion.

The law is clear that an affirmative effort to expand the pool of qualified applicants is legal and non-discriminatory. For example, in ***Raso v. Lago***, 958 F. Supp. 686, 704 (D. Mass. 1997), ***aff'd***, 135 F.3d 11 (1st Cir. 1998), the court granted the defendants' Motion to Dismiss a claim of race-based discrimination under Title VI of the Civil Rights Act of 1964 because the plaintiffs failed to demonstrate that the defendants' race based actions were discriminatory.[2] The plaintiffs, a group of predominantly white displaced residents of Boston's West End, alleged that the defendants, which included local developers, discriminated against them when they implemented race-based recruitment strategies in an effort to expand the pool of qualified minority applicants so that the West End development would reflect the "racial and economic diversity of the City at large[.]" *Id*. at 691. Notably, the court dismissed the claim because while race was a consideration

---

[2] Courts apply the same legal analysis to sex and race-based discrimination claims propounded under Title VI and VII of the Civil Rights act of 1964. ***Georgia State Conf. of Branches of NAACP v. State of Ga.***, 775 F.2d 1403, 1417 (11th Cir. 1985); ***see also Natl. Ass'n For Advancement of Colored People v. Med. Ctr., Inc.***, 657 F.2d 1322, 1333 (3d Cir. 1981); ***see also Middlebrooks v. Univ. of Md.***, 166 F.3d 1209 (4th Cir. 1999) (unpublished) (table decision) (stating that Title VI and § 1981 claims "are appropriately analyzed under the Title VII proof scheme, first articulated in McDonnell Douglas Corp. v. Green.").

4925-1369-0019, v. 1

in the defendants' recruitment strategies, applicants were not chosen unless they were qualified. *Id*. at 692-93, 703-04. Just like the targeted recruitment strategies implemented in ***Raso***, the Forum was designed to expand the pool of qualified candidates by encouraging qualified women to apply for promotions when they become available. Historically, qualified men did not need such encouragement to throw their hat into the ring. Of the pool of qualified candidates, Coke Northeast selects the best qualified candidate without regard to sex.

In ***Shuford v. Alabama State Bd. of Educ.***, 897 F. Supp. 1535, 1543 (M.D. Ala. 1995), female plaintiffs sued the Alabama State Board of Education (the "Board") *inter alia* for Title VII sex-based discrimination. Subsequently, the parties moved the court to approve a proposed partial consent decree (the "Decree"). *Id*. at 1544-45. The Decree contained several provisions, one of which incorporated sex-conscious procedures aimed at expanding the pool of qualified applicants in an effort to cure an underutilization of female employees. ***See Id***. at 1546. In determining whether the Decree's sex-conscious recruiting methods were legal, the court looked to Title VII and considered inclusive versus exclusive affirmative action techniques and public policy. *Id*. at 1550. Inclusive techniques are those that are focused on ***expanding*** the pool of qualified applicants as much as possible while exclusive techniques work to ***select*** some candidates rather than others from a pool. *Id*. at 1551. While both inclusive and exclusive affirmative action techniques can be deemed legal, the court noted that inclusive techniques are so benign with respect to third parties or non-beneficiaries that they "do not require the traditional Title VII … analysis." *Id*. at 1552. The court concluded that the affirmative sex-conscious recruitment strategies prescribed in the Decree were inclusive and legal because they did not impact the candidate selection process and they aligned with public policy. *Id*. at 1556.

4925-1369-0019, v. 1

A comparable issue arose in *Barbera v. Metro-Dade Cnty. Fire Dept.*, 117 F. Supp. 2d 1331 (S.D. Fla. 2000). There, a group of male plaintiffs sued the Metro-Dade Fire Department (the "Department") claiming reverse sex-based discrimination under Title VII. *Id*. at 1333-1334. The plaintiffs alleged, in part, that the Department modified a hiring test with an aim to maximize the number of eligible female applicants who made it to the interview stage and thereby discriminated against the male applicants. *Id*. The court granted summary judgement to the Department and noted that modifying the test to increase the number of qualified female applicants is neither discriminatory nor actionable. *Id*. at 1336. The court noted that "'Recruitment and other techniques of inclusion do not affect the selection process for hiring or promotion. Rather, inclusive techniques seek to ensure that as many qualified candidates as possible make it to the selection process'" *Id*. at 1337 (*quoting, Shuford v. Alabama Board of Education, supra,* at 1551). Such efforts to increase the pool of qualified candidates without altering the selection process itself, have no discriminatory impact. *Id*. at 1338; *see also Duffy v. Wolle*, 123 F.3d 1026, 1038-39 (8th Cir. 1997), *cert. denied,* 5232 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998) (In *Duffy,* the United States Court of Appeals for the Eighth Circuit analyzed the reverse discrimination in a manner similar to a Title VII claim and held that "The only harm to white males is that they must compete against a larger pool of qualified applicants. This of course is not an appropriate objection and does not state a cognizable harm.").

Similarly, Coke Northeast held the Forum to expand the pool of qualified female candidates with a hope to make inroads in the manifest imbalance of women in myriad roles within Coke Northeast. At no time did Coke Northeast alter the process it utilizes to select employees so as to favor women over men. Accordingly, Coke Northeast's efforts to expand its pool of qualified candidates vis-à-vis the one-day Forum is not discriminatory and not actionable.

4925-1369-0019, v. 1

## II.    The EEOC Failed To Allege Any Actionable Harm Respecting An Identifiable Term Or Condition Of Employment.

Title VII requires the EEOC to show that Coke Northeast's failure to invite the charging party and alleged aggrieved employees to the Forum brought about some "disadvantageous" change in an employment term or condition.  *Muldrow*, 601 U.S. at 354 (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).  "The words 'discriminate against,' [found in *42 U.S.C. § 2000e-2(a)(1)*] … refer to 'differences in treatment that injure' employees.'" *Muldrow*, 601 U.S. at 354 (*citing Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 681 (2020)).

To establish a Title VII sex discrimination claim, the EEOC "must show **_some harm_** respecting an identifiable term or condition of employment".  *Muldrow,* 601 U.S. at 354-55 (emphasis added).  In *Muldrow*, the defendant transferred the plaintiff out of her position as a plainclothes police officer in a specialized Intelligence Division that included status as an FBI-deputized Task Force Officer.  *Id*. at 350-51.  After the transfer, the plaintiff no longer worked with high-ranking officials on departmental priorities, lost access to an unmarked take-home vehicle, and moved to a less regular schedule that included weekend shifts.[3]  *Id*. at 351.  The plaintiff sued under Title VII, alleging that the transfer "'discriminate[d] against' her based on sex 'with respect to' the 'terms [or] conditions' of her employment.'"  *Id*. (*quoting 42 U.S.C.A. § 2000e-2(a)(1)*).  The Supreme Court held that the plaintiff need not show the transfer effected a "significant" change in working conditions producing a material employment disadvantage.  *Id*. at 359.  However, the plaintiff must still show "**_some harm_** respecting an identifiable term or condition of employment".  *Id*. at 354-55 (emphasis added).

Although the Court did not precisely define what constitutes "some harm," it ultimately concluded that the plaintiff's collective allegations had satisfied the requirement "with room to

---

[3] Although the plaintiff's rank and pay remained the same.  *Muldrow*, 601 U.S. at 351.

spare." *Id*. at 359.  Justice Thomas provided clarification in his concurring opinion: to establish a claim, a plaintiff must have suffered an actual disadvantage as compared to minor changes - *i.e.*, more than a "trifling harm."  *Muldrow,* 601 U.S. at 360 (Thomas, J., concurring).  Justice Alito, in a separate concurring opinion gave the following example: "[w]e do not typically say that we were harmed or injured by every unwanted experience.  What would we think if a friend said, 'I was harmed because the supermarket had run out of my favorite brand of peanut butter,' or, 'I was injured because I ran into three rather than the usual two red lights on the way home from work'?" *Muldrow*, 601 U.S. at 363 (Alito, J., concurring).

In the case at hand, the EEOC fails to allege any cognizable harm.  Not being invited to a one-time one-day event that included "a social reception, team-building exercises[,] … recreational activities[,]" a "paid … hotel room[,]" "food and/or beverages," and "the opportunity to hear from speakers … and corporate executives from other companies, who discussed their career paths," and was held over a period of less than 24 hours is far too trifling to amount to some harm.  *Complaint*, at ¶¶ 13(f)-(j), ECF No. 1.  None of these allegations, whether viewed individually or collectively, shows "some harm respecting an identifiable term or condition of employment."  *Muldrow*, 601 U.S. at 354-55.  Male employees were not made worse off because of this one-day event.

*Muldrow's* progeny supports this conclusion.  *See Williams v. Memphis Light, Gas & Water*, 2024 WL 3427171, at 5 (6th Cir. July 16, 2024) (where exclusions from meetings did not affect identifiable conditions of employment because the meetings were not related to the plaintiff's role and she was not made worse off by not attending.  The employee bears the burden of showing that attendance at such gatherings may have improved employment status or promotion opportunities); *see also Menchu v. Multnomah Cty. Health Dep't*, 2024 WL 4242514, at 9 (D.

9

Or. Aug. 16, 2024) ("[a]bsent any such evidence, [a plaintiff] cannot show that his exclusion from social gatherings was an adverse employment action.").  In **Brown v. FCA US LLC**, 2025 WL 3657226, at 3-5 (6th Cir. Dec. 17, 2025) (*quoting* Brown Declaration, R.28-1, PageID at 634; *also quoting* Brown Br. 11), the plaintiff alleged sex and racial discrimination and claimed her supervisor "treat[ed] a white male coworker preferentially, including taking him out to lunch and chit-chatting with him while refusing to speak to [her][,]" thereby denying her "equal access to mentoring and professional camaraderie compared to white male colleagues."  The court noted that the plaintiff did not "argue that her supervisor's alleged lunch snub … qualified as an adverse employment action in the first place[,]" and ultimately held that her "nebulous allegation about lack of 'equal access' to 'professional camaraderie' cannot sustain her [discrimination] claim."  **Id**.

By contrast, in **Strong v. Fort Myer Construction Corp.**, 2025 WL 2643457, 1 (D.D.C. Sept. 15, 2025) (*quoting* Complaint ¶ 13) (emphasis added) the plaintiff alleged racial discrimination and, among other things, claimed he was not excluded from just one event but instead "was **_frequently_** excluded from team activities and social gatherings".  Following the Court's logic in **Muldrow**, the court held that the allegation concerning his frequent exclusion from team activities and social gatherings "(barely) clears the bar to plausibly allege an adverse employment action," because it "plausibly constitutes worse treatment with respect to the terms and conditions of [the plaintiff's] employment."[4]  **Id**. at 2-3.  If **Strong** only narrowly clears the pleading threshold established by **Muldrow**, then the EEOC's far thinner allegations that a one-time one-day event violates Title VII fall well short of stating a plausible claim.

---

[4] The court ultimately granted the motion to dismiss because plaintiff failed to allege that "he suffered an adverse employment action because of race."  **Strong**, 2025 WL 2643457, 4.

4925-1369-0019, v. 1

The EEOC's sensationalized allegations regarding receipt of food, beverages, and a one-night hotel accommodation for those traveling fare no better. *Complaint*, at ¶¶ 13(i)-(j), ECF No. 1.; *see Mills v. Amazon.com Servs., LLC*, 2025 WL 861381 at 3 (N.D. Okla. Mar. 19, 2025) ("the denial of fresh pizza, pies, and swag does not relate to a term or condition of plaintiff's employment" and therefore, "does not constitute an adverse employment action.").[5]  The EEOC's allegations in the Complaint that the alleged exclusion of male employees from the so-called benefits of food, beverages and one night at a hotel at a one-time, one-day event fall woefully short of establishing an adverse employment action.

Finally, the EEOC's allegation that Forum attendees received their regular wages as did the male (and female) employees who did not attend does not alter the outcome. *See Complaint* ¶ 13(h), ECF No. 1.  The EEOC does not allege that the men lost any pay.  Instead, the EEOC merely argues that the female attendees were not required to perform their regular job duties on September 11, 2024.  *Id*.  The performance of different responsibilities on a single day without any disparity in pay is too trifling to come close to satisfying the some-harm standard articulated in *Muldrow*.

Taken together, the EEOC's allegations fail to show that either the charging party or the alleged aggrieved employees were worse off as a result of their not attending the one-time one-day event.  The male employees were not disadvantaged regarding a term or condition of employment and were not disadvantaged in any way regarding opportunities for advancement. Given the absence of harm as defined by *Muldrow*, the Complaint should be dismissed.

---

[5] The court ultimately granted the defendant's motion for summary judgment because "plaintiff fail[ed] to show a single adverse employment action." *Mills*, 2025 WL 861381 at 8.

4925-1369-0019, v. 1

**III.    The EEOC Failed To Allege Facts Sufficient To Support An Award Of Punitive Damages.**

Punitive damages are only available in Title VII claims when the employer engaged in intentional discrimination and has done so "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *42 U.S.C. § 1981a(b)(1)*.  Punitive damages are not available if the employer discriminates with a distinct belief that its discrimination is lawful or reasonably believes that its discrimination satisfies a statutory exception to liability.  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536-37 (1999); *see also McDonough v. City of Quincy*, 452 F.3d 8, 24 (1st Cir. 2006) ("[M]alice and reckless indifference concern … the employer's knowledge that it is acting in violation of federal law.").

"Although a complaint need not contain 'detailed factual allegations' to survive a motion to dismiss, 'a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Shukh v. Seagate Tech., LLC*, 873 F. Supp. 2d 1087, 1089 (D. Minn. 2012) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This standard holds true regarding claims for punitive damages.  *Id* at 1090.  The EEOC has not alleged any facts that make a claim for punitive damages plausible.  The one conclusory statement in the Complaint related to Coke Northeast's state of mind merely regurgitates the elements needed to recover punitive damages.

Even accepting all factual allegations as true, the Complaint is devoid of allegations of Coke Northeast's evil intent, conscious wrongdoing, or its reckless or callous indifference to the alleged aggrieved individuals' federally protected rights.  *Kolstad*, 527 U.S. at 538 (the justification for awarding punitive damages "lies in the evil intent of the defendant[,]" thus, "a positive element of conscious wrongdoing is always required.") (internal citations omitted); *see also Shukh*, 873 F. Supp. 2d at 1091 (where the allegations in the complaint did not "sufficiently

12

speak to [the defendant's] state of mind so as to permit a reasonable inference of malice or reckless disregard of [the plaintiff's] rights."). As in **Shukh**, the Complaint does not "plausibly suggest the requisite state of mind – here that the employer discriminated in the face of a perceived risk that its actions will violate federal law. *Id*.

Moreover, given the position the EEOC advocated for decades including in the months leading up to the one-time one-day Forum, it is not plausible that the EEOC could address the shortcomings of its Complaint vis-à-vis an Amended Complaint. The EEOC consistently encouraged employers to take affirmative action including the expansion of recruitment pools, in order to provide equal opportunity. Title VII expressly provides a legal defense for employers who act in "good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission[.]" *42 U.S.C. § 2000e-12(b)(1)*. Just months prior to the Forum, the EEOC advocated that "[t]he EEOC and the Supreme Court have long agreed that Title VII permits employers to adopt voluntary affirmative-action plans to remedy manifest imbalances in their workforces …" *Brief of The Equal Employment Opportunity Commission as Amicus Curiae Supporting Defendants on The Issue Addressed Herein* at 2, *Roberts*, 2024 WL 2295482 (N.D. Ohio May 21, 2024), *aff'd*, 167 F.4th 955 (6th Cir. 2026). The Court should strike the EEOC's demand for punitive damages.

## CONCLUSION

For all of the forgoing reasons, Defendant respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and proper.

13

4925-1369-0019, v. 1

Dated:  April 20, 2026

Respectfully submitted,

Coca-Cola Beverages Northeast, Inc.,

By their attorneys,


 /s/ Frederick B. Finberg
Frederick B. Finberg, Esquire
rfinberg@thebennettlawfirm.com
Peter Bennett, Esquire
pbennett@thebennettlawfirm.com

THE BENNETT LAW FIRM, P.A.
75 Market Street, Suite 201
Portland, ME  04101
207.773.4775 (Telephone)
207.774.2366 (Facsimile)

## CERTIFICATE OF SERVICE

I, Frederick B. Finberg, hereby certify that on April 20, 2026, I filed the foregoing via the

Court's CM/ECF system, which will automatically send a notice of filing to counsel of record.


/s/ Frederick B. Finberg

14

4925-1369-0019, v. 1