**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**U.S. Equal Employment Opportunity Commission**

v.

Case No. 1:26-cv-115-PB-AJ
Opinion No. 2026 DNH 149

**Coca-Cola Beverages Northeast, Inc.**

## MEMORANDUM AND ORDER

The United States Equal Employment Opportunity Commission ("EEOC") brings this action against Coca-Cola Beverages Northeast, Inc. ("Coca-Cola") under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. It claims that Coca-Cola violated Title VII by denying male employees the opportunity to attend Coca-Cola's Women's Forum, a two-day conference that Coca-Cola asserts was "focused on increasing the pool of qualified candidates for promotion." Doc. 6-1 at 2. Coca-Cola moves to dismiss, primarily arguing that the EEOC fails to allege actionable harm arising from the Women's Forum in its complaint. For the reasons set forth below, I deny Coca-Cola's motion.

## I. BACKGROUND

The EEOC brings this action on behalf of the charging party, a male who works as a production employee at Coca-Cola's Londonderry, New

Hampshire facility. Doc. 1 at 3. On September 10 and 11, 2024, Coca-Cola sponsored a trip and networking event labeled the "Women's Forum" at the Mohegan Sun and Casino in Connecticut. Id. Coca-Cola contends that the purpose of the Forum was to "focus[] on increasing the pool of qualified candidates for promotion." Doc. 6-1 at 2. The Forum included a social reception, team-building exercises, recreational activities, and an opportunity to hear executives from Coca-Cola and elsewhere speak about their career paths. Doc. 1 at 3. Female employees were invited to the Forum, and those who attended the event were excused from their normal work duties on those days. Id. at 4. Coca-Cola paid female employees who attended the Forum their usual salary or wages without requiring them to use paid time off on the days of the conference, paid for their hotel charges during the conference, and provided food and beverages to attendees. Id. Male employees were not invited to attend the Forum; the charging party and other male employees say they would have attended the event had they been invited. Id. at 3-4. As a result, the EEOC alleges that Coca-Cola did not provide male employees with any of the benefits associated with attendance at the Forum, and that male employees consequently suffered damages. Id. at 4.

The EEOC argues that Coca-Cola's exclusion of male employees from the Forum constitutes a denial of equal compensation, terms, conditions, or privileges of employment on the basis of sex. Id. It further alleges that Coca-

Cola's unlawful employment practices were intentional and done with malice or reckless indifference to the federally protected rights of its male employees. Id.

In response, Coca-Cola moves to dismiss the charges against it for failure to state a claim on which relief can be granted. Doc. 6. In that motion, it argues that the EEOC fails to allege any actionable harm arising from the one-time Forum, nor alleges any facts to support an award of punitive damages. Coca-Cola also contends that the Forum was a lawful effort to address imbalances in its workforce by expanding the pool of applicants for promotion.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id.

(cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all of the plaintiff's non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

## III. ANALYSIS

Coca-Cola's principal argument is that the EEOC's failure to allege any actionable harm respecting an identifiable term, condition, or privilege of employment arising from male employees' exclusion from the Forum precludes it from proceeding on its Title VII claim. Coca-Cola also argues that it cannot be held liable under Title VII because the Women's Forum was a nondiscriminatory effort to expand the pool of qualified candidates for promotion. Finally, Coca-Cola contends that the EEOC's request for punitive damages must be dismissed because the complaint fails to allege facts sufficient to support such an award. I assess the sufficiency of the EEOC's complaint with respect to each of Coca-Cola's arguments below.

## A. Title VII Adverse Employment Action

Title VII, in relevant part, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a claim for employment discrimination under Title VII, "a plaintiff must show, among other things, that he suffered an adverse employment action on account of a protected ground." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (cleaned up).

As the language of Title VII requires, an adverse employment action must relate to the "terms, conditions, or privileges of employment." § 2000e-2(a)(1). The Supreme Court has consistently made clear that the statute's language "evinces a congressional intent '"to strike at the entire spectrum of disparate treatment of men and women"' in employment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) (quoting L.A. Dep't. of Water & Power v. Manhart, 435 U.S. 702, 707 n.13 (1978)). Accordingly, the Court has explained that the "'terms [or] conditions' phrase . . . is not used 'in the narrow contractual sense'; it covers more than the 'economic or tangible.'" Muldrow v. City of St. Louis, 601 U.S. 346, 354 (2024) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) and then Meritor, 477 U.S. at 64). Similarly, "[a] benefit that is part and parcel of the employment relationship" is a "privilege" under Title VII and "may not be

doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." Hishon v. King & Spalding, 467 U.S. 69, 75-76 (1984).

Until recently, multiple courts, including the First Circuit, required an adverse employment action to be "material" in order to be actionable, meaning that "the challenged conduct was 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Walsh v. HNTB Corp., 169 F.4th 330, 339 (1st Cir. 2026) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)). But in a 2024 decision entitled Muldrow v. City of St. Louis, 601 U.S. 346 (2024), the Supreme Court rejected the materiality requirement. Instead, the Court imposed a lower standard: a plaintiff "must show some harm respecting an identifiable term or condition of employment" to establish a discrimination claim under Title VII, but the harm need not be "significant."[1] Id. at 354-55 (emphasis added). Interpreting Muldrow, the

[1] As the very phrase "some harm" indicates, Muldrow does not altogether eliminate the need for a Title VII plaintiff to make some showing of harm separate from the discrimination itself. In its response to Coca-Cola's motion to dismiss, the EEOC invokes Justice Kavanaugh's contrary view that "the text of Title VII does not require a separate showing of some harm" because "[t]he discrimination is harm." Doc. 9 at 10 (citing Muldrow, 601 U.S. at 365 (Kavanaugh, J., concurring)). But Justice Kavanaugh's view is neither binding authority nor in line with the Court's holding in Muldrow. As the Court explained, a plaintiff must still demonstrate that the challenged employer conduct "brought about some 'disadvantageous' change in an employment term or condition." 601 U.S. at 354 (emphasis added) (quoting

First Circuit has held that an adverse employment action is "any employment event, regardless of its severity, in which an employer's conduct leaves an employee (1) 'worse off' (2) with respect to the 'terms [or] conditions' of their employment." Walsh, 169 F.4th at 339 (quoting Muldrow, 601 U.S. at 354-55).

The question of whether an employee has suffered an adverse employment action sufficient to support a Title VII claim is a question of law for the court. See Morales-Vallellanes, 605 F.3d at 33. Here, the EEOC's core allegation is that Coca-Cola's exclusion of male employees from the Forum constituted an adverse employment action under Muldrow. In response, Coca-Cola argues that the EEOC has failed to allege facts sufficient to satisfy the Muldrow standard—in other words, that the EEOC has failed to demonstrate that Coca-Cola's male employees suffered "some harm" because of their exclusion. 601 U.S. at 355.

---

Oncale, 523 U.S. at 80). Recent First Circuit cases have affirmed this reading of Muldrow, requiring plaintiffs to point to some disadvantageous consequence of their alleged disparate treatment. See, e.g., Rios v. Centerra Group LLC, 106 F.4th 101, 112-13 (1st Cir. 2024) (citing Muldrow, 601 U.S. at 354-55) (rejecting claim of adverse employment action where instance of disparate treatment had no "consequences" and thus "[did] not represent any disadvantageous change in the terms or conditions of the plaintiff's employment"); O'Horo v. Bos. Med. Ctr. Corp., 131 F.4th 1, 18 (1st Cir. 2025) (same).

The EEOC alleges that the charging party and similarly situated male Coca-Cola employees suffered harm of three sorts due to their exclusion from the Forum. First, it alleges that male employees' inability to attend the Forum's speaker presentations and networking events—a "social reception, team-building exercises, and recreational activities"—could plausibly constitute harm related to "compensation, terms, conditions, or privileges of employment." Doc. 1 at 3; Doc. 9 at 9-10. Second, it argues that "male employees were denied the same paid time off that the female employees received to attend the event," and that denial of paid time off is itself an adverse employment action under Title VII. Doc. 9 at 10-11. Finally, it contends that male employees were harmed by being denied the tangible benefits incidental to Forum attendance, which included an overnight hotel stay and "food and/or beverages." Doc. 1 at 4.

Construing the complaint in the light most favorable to the EEOC, I am unable to conclude at this early stage that these facts fail to present any plausible claim of harm sufficient to satisfy the Muldrow standard. The EEOC's three allegations of harm at least raise a plausible inference that Coca-Cola's exclusion of male employees from the Forum may have left them "(1) 'worse off' (2) with respect to the 'terms [or] conditions' of their employment." Walsh, 169 F.4th at 339 (quoting Muldrow, 601 U.S. at 354-55). As the Supreme Court explained in Muldrow, a Title VII plaintiff need

only demonstrate "some harm" stemming from the challenged employer conduct, even if that harm is insignificant or immaterial. 601 U.S. at 354-55. Here, at least for purposes of surviving a motion to dismiss, the EEOC has plausibly met that standard by pointing to missed networking opportunities, the potential deprivation of paid time off, and the denial of perks including a company-paid hotel stay, food, and beverages. And the fact that these alleged injuries occurred in connection with a formal, employer-sponsored event supports the EEOC's position that the differential treatment at issue here relates to the "terms, conditions, or privileges of employment," especially in light of the Supreme Court's consistently broad reading of that language in the Title VII context. Doc. 9 at 9-10; § 2000e-2(a)(1); see Muldrow, 601 U.S. at 354; see also Strong v. Fort Myer Constr. Corp., 2025 WL 2643457, at *3 (D.D.C. 2025) ("[T]he alleged exclusion from team activities by immediate supervisors plausibly constitutes worse treatment with respect to the terms or conditions of [the plaintiff's] employment." (cleaned up)).

Because the alleged facts "raise a reasonable expectation" that discovery may produce evidence that proves the EEOC's Muldrow-based claims, I cannot at this stage grant Coca-Cola's motion on this basis. Twombly, 550 U.S. at 556.

## B. Coca-Cola's Candidate Pool Expansion Argument

Separate from its contention that male employees did not suffer cognizable harm, Coca-Cola argues that the Forum was a lawful effort to expand the company's pool of qualified candidates for promotion by encouraging female employees to seek professional advancement at the company. Doc. 6-1 at 5-7. Specifically, Coca-Cola contends that because the Forum was designed to expand the company's pool of candidates and Forum attendance has never had any bearing on the promotion selection process itself, Coca-Cola's hosting of the Forum "is not discriminatory and not actionable." Id. at 7. In service of this argument, Coca-Cola relies primarily on three district court cases recognizing the lawfulness of inclusive pool-expanding recruitment efforts that had no bearing on hiring or promotion decisions.[2] Id. at 5-7 (citing Raso v. Lago, 958 F. Supp. 686 (D. Mass. 1997);

[2] Coca-Cola at various points invokes a handful of other authorities seemingly in support of the same or a similar argument. It alleges, for example, that Executive Order 11246 required it to take affirmative steps to correct the imbalance of women in its workforce. Doc. 6-1 at 1-2. Coca-Cola also argues that it relied in good faith on 29 C.F.R. § 1608, a now-rescinded EEOC regulation that provided guidelines for employers implementing affirmative action programs, and on other EEOC advocacy regarding the permissibility of pool expansion efforts. See id. at 2-3, 13. To the extent that Coca-Cola attempts to argue that its hosting of the Forum was compliant with either or both of these authorities such that it cannot be held liable under Title VII, it does not sufficiently develop that argument here. And regardless, even if Coca-Cola did adequately present that argument, I agree with the EEOC that dismissal based on those contentions would be

Shuford v. Alabama State Bd. of Educ., 897 F. Supp. 1535 (M.D. Ala. 1995); Barbera v. Metro-Dade Cnty. Fire Dep't., 117 F. Supp. 2d 1331 (S.D. Fla. 2000)).

I am not persuaded that any of the three cases Coca-Cola cites offers a roadmap for dismissing the EEOC's Title VII claim. In each cited case, the respective court held that recruitment efforts are not discriminatory where their only effect is to expand the pool of candidates—or in other words, simply because they force non-minority applicants to compete against additional minority applicants during the hiring or promotion process.[3] But here, the

premature at this stage, where the applicability of any such defense is not clear from the face of the EEOC's pleadings. See Blackstone LLC v. FDIC, 244 F. 3d 193, 197 (1st Cir. 2001) ("[F]or dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." (cleaned up)); see also Facet Tech. Corp., v. TomTom Int'l B.V., 2025 WL 315390, at *6-7 (D.N.H. Jan. 28, 2025) (rejecting defense raised in motion to dismiss because it amounted to "an evidentiary contention that is underdeveloped and far from clear from the face of [the plaintiff's] pleadings").

[3] In Raso v. Lago, the court considered whether the defendant land developers discriminated against a group of predominantly white plaintiffs by affirmatively soliciting minority applicants for an apartment development in Boston's West End. 958 F. Supp. at 689. The court ultimately rejected the plaintiffs' discrimination claims because the plaintiffs had not been denied any benefit as a result of the developers' recruitment strategies and had not demonstrated any discriminatory intent. Id. at 703-04. In Shuford v. Alabama State Board of Education, the court assessed the legality of several consent decree provisions that were aimed at including more women in the candidate selection pool in order to resolve the underrepresentation of female employees in Alabama's postsecondary education system. 897 F. Supp. at

EEOC does not allege that the Forum produced discrimination in Coca-Cola's promotion process, nor does it argue that pool expansion itself is an improper or discriminatory practice.[4] Rather, the crux of the EEOC's argument is that the means by which Coca-Cola sought to expand its candidate pool deprived male employees of opportunities and benefits in ways that constituted harm to the male employees' terms, conditions, or privileges of employment. Doc. 9 at 9-10. None of the cases Coca-Cola cites considered such an argument.[5] And none authorize an employer to utilize a recruitment tactic that discriminates

---

1545-47. Noting that there was "no suggestion" that the consent decree's inclusive recruitment strategies "will cause any harm to qualified applicants other than increased competition," the court approved the provisions as legal. Id. at 1553-54. Finally, in Barbera v. Metro-Dade County Fire Department, the court reviewed modifications to a fire department's physical assessment test that made it easier for women to pass the test and therefore become eligible for employment. 117 F. Supp. 2d at 1332-34. Explaining that the test modifications' only effect was to "increase[] the number of qualified female applicants in the hiring pool" without actually impacting the hiring selection process itself, the court held that the modifications were nondiscriminatory and legal. Id. at 1338.

[4] The EEOC explicitly concedes that its "[c]omplaint does not allege disparate treatment in hiring or promotion and includes no allegations concerning [Coca-Cola's] hiring practices whatsoever." Doc. 9 at 16.

[5] In Shuford, for example, the court specifically noted that "the decree does not require that any current employee be terminated or adversely affected in his or her employment for the sake of achieving [the employer's diversity] goals." 897 F. Supp. at 1546 (emphasis added). And in Barbera, the court highlighted that the defendant-employer's effort to include more women in the hiring pool "ha[d] only one effect on male applicants," which was to force them to compete with qualified female candidates. 117 F. Supp. 2d at 1336 (emphasis added).

against certain of its current employees with respect to their terms, conditions, or privileges of employment for the sake of broadening its pool of candidates for promotion. Thus, even accepting as true Coca-Cola's contentions that the Forum's purpose was to address a gender imbalance in its workforce and that Forum attendance ultimately had no impact on the company's promotion decisions, I am not persuaded that those facts shield it from the specific Title VII challenge the EEOC has raised here. Accordingly, I cannot grant Coca-Cola's motion to dismiss on this basis.

### C. Punitive Damages

Finally, Coca-Cola moves to dismiss the EEOC's request for punitive damages, arguing that the complaint fails to provide facts sufficient to support such an award. Although the complaint does not appear to allege facts that would support an award of punitive damages in this case, I ultimately agree with my colleague's reasoning in Mount Prospect Academy, Inc. v. Philadelphia Indemnity Insurance Co., 823 F. Supp. 3d 183 (D.N.H. 2026), that punitive damages are "a form of relief" rather than a "claim," and that a "12(b)(6) motion is not an appropriate vehicle to test a plaintiff's entitlement to a particular form of relief." Id. at 189 (quoting Johnson v. Rapid Sheet Metal, LLC, 560 F. Supp. 3d 623, 629-30 (D.N.H. 2020)). Because dismissal of the EEOC's request for punitive damages would be improper at this stage, I reject Coca-Cola's argument for dismissal of that

request without prejudice to Coca-Cola's right to contest the appropriateness of punitive damages at a later point in the proceedings.

## IV. CONCLUSION

For the reasons explained above, I conclude that the EEOC has plausibly alleged that Coca-Cola's conduct amounts to actionable harm under Title VII. As such, I deny Coca-Cola's motion to dismiss without prejudice to its right to renew its arguments in a properly supported motion for summary judgment.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

October 16, 2026

cc: Counsel of Record